UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN WALTER SEAKS,                          Case No. 12-11783

        Plaintiff,                        Bernard A. Friedman
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 12)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On April 20, 2012, plaintiff Kevin Walter Seaks filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A. Friedman referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 8, 12).

### B.    Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on August 28, 2008, alleging that he became disabled beginning May 5, 2006.  (Dkt. 5-2, Pg ID 40; Dkt. 5-5, Pg ID 128-29).  The claim was initially disapproved by the Commissioner on December 22, 2008.  (Dkt. 5-3, Pg ID 77).  Plaintiff requested a hearing and on September 20, 2010, plaintiff appeared with an attorney before Administrative Law Judge ("ALJ") Lantz McClain, who considered the case de novo.  (Dkt. 5-2, Pg ID 59-75).  At the hearing, plaintiff, through counsel, amended the alleged onset date of disability to May 5, 2008.  (*Id.*).  In a decision dated October 25, 2010, the ALJ found that plaintiff was not disabled and that he could perform his past work as a customer service representative.  (Dkt. 5-2, Pg ID 37-47).  Plaintiff requested a review of this decision on November 3, 2010.  (Dkt. 5-2, Pg ID 35-36).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 6, 2012, denied plaintiff's request for review.  (Dkt. 5-2, Pg ID 18-22); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED**

2

under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1958 and was 50 years of age on the alleged amended disability onset date and 52 years old at the time of the administrative hearing. (Dkt. 5-2, Pg ID 63).  Plaintiff's past relevant work included work as a customer service representative.  (Dkt. 5-2, Pg ID 45).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged amended onset date.  (Dkt. 5-2, Pg ID 42).  At step two, the ALJ found that plaintiff's history of Guillain-Barre syndrome, degenerative disc disease of the lumbar spine, diabetes mellitus, history of ankle injuries, carpal tunnel syndrome, and obesity were "severe" within the meaning of the second sequential step.  (*Id.*).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*).

The ALJ concluded that plaintiff had the following residual functional capacity:

> to occasionally lift and/or carry 10 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk at least 2 hours out of an 8-hour workday, and sit at least 6 hours out of an 8-hour work day; all with normal breaks.  The claimant can also occasionally stoop, bend or climb such things as stairs or ramps.

(Dkt. 5-2, Pg ID 43-46).  At step four, the ALJ found that plaintiff was capable of performing his past relevant work as a customer service representative, which the ALJ found does not require the performance of work-related activities precluded by plaintiff's RFC, and thus plaintiff was not disabled.  (Dkt. 5-2, Pg ID 46).

### B.    Plaintiff's Claims of Error

Plaintiff alleges one claim of error: The Commissioner erred as a matter of law by forming an inaccurate hypothetical that did not accurately portray plaintiff's impairments.  According to plaintiff, the ALJ failed to properly evaluate the medical opinion of plaintiff's "long-time treating physician," Dr. Gavin Awerbuch, M.D., a neurologist.  Plaintiff argues that, as a treating physician, Dr. Awerbuch's opinion is entitled to great weight and substantial deference, if that opinion is not contradicted, and that the ALJ must explain how any material inconsistencies or ambiguities in the record evidence were considered and resolved.  Plaintiff avers that the ALJ erred in instead giving great weight to the opinion of Dr. R. Scott Lazzara, M.D., a consultative examiner in internal medicine.  According to plaintiff, although Dr. Lazzara reported that he found no carpal tunnel disease or degenerative arthritis in plaintiff's back upon examination, he failed to perform any testing to make this conclusion.  (Tr. 242).  However, plaintiff argues, an EMG performed by Dr. Awerbuch, on September 25, 2007, made a diagnosis of bilateral carpal tunnel syndrome.  (Tr. 234).  Plaintiff also points out that an MRI performed

at Michigan State University on June 29, 1992 found disc degeneration, herniation, and ridging at L1-L2 to the left of midline.  (Tr. 233).  Thus, plaintiff concludes, Dr. Lazzara's consultative examination report was based on improper information.

Plaintiff also argues that the ALJ improperly stated:

> The claimant alleges carpal tunnel syndrome and degenerative disc disease are disabling preventing him from working.  However, the claimant did undergo surgery for the alleged impairment, which certainly suggests that the symptoms were genuine.  While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. . . .

(Dkt. 5-2, Pg ID 45-46).  Plaintiff states that he never had surgery on his hands, and thus the ALJ's decision is based on improper information.  Plaintiff thus asks the Court to reverse the decision denying benefits and remand this case for further proceedings to properly and fully evaluate the record evidence.

## C.    The Commissioner's Motion for Summary Judgment

The Commissioner states that the ALJ found plaintiff had serious limitations related to, among other severe impairments, carpal tunnel syndrome and degenerative disc disease, but found plaintiff could nonetheless perform his past work as a customer service representative.  The Commissioner argues that substantial evidence supports the ALJ's assessment of plaintiff's capabilities and his finding that plaintiff could perform his past work.

The Commissioner contends that the ALJ reasonably weighed the opinion of

5

Dr. Awerbuch, the neurologist plaintiff visited three times.  Plaintiff first met with

Dr. Awerbuch for a neurological evaluation related to carpal tunnel syndrome and

low back pain in September 2007.  (Tr. 183-85).  Plaintiff stated that he had been

diagnosed with Guillain-Barre in 1980 and carpal tunnel syndrome in 1994.  (*Id.*).

Dr. Awerbuch found that Plaintiff had made full recovery from Guillain-Barre, and

physical examination showed good range of motion in plaintiff's arms and legs,

with some decreased range of motion in his low back.  (*Id.*).  Plaintiff's

reflexes were normal, he had normal muscle mass, tone, and strength, a smooth

gait with even balance, and was able to heel-to-to walk as well as squat and

recover.  (*Id.*).  Plaintiff complained of numbness in his left middle finger, but

indicated the numbness occurred primarily at night.  (*Id.*).  Dr. Awerbuch found

some weakness of grasp and pinch, and positive Tinel's and Phalen's signs (tests

for carpel tunnel syndrome).  (*Id.*).  After the evaluation, Dr. Awerbuch concluded

that Plaintiff "does not need anything at the moment in regard to pain medication.

He is able to manage quite well with occasional Motrin."  (*Id.*).  Dr. Awerbuch

encouraged Plaintiff to use wrist splints and take daily vitamin B supplements.

(*Id.*).

Plaintiff saw Dr. Awerbuch again one month later, in October 2007 (Tr.

187).  Dr. Awerbuch continued to recommend use of carpal tunnel splints and

vitamin B supplements, and did not prescribe any pain medications.  (*Id.*).

6

Plaintiff did not see Dr. Awerbuch again until March 2009, when he complained of numbness and tingling in his hands and wrists as well as low back pain that radiated into his legs. (Tr. 258). Plaintiff reported that his condition was unchanged from 2007 and that Motrin improved his symptoms. (*Id.*). Physical examination showed weakness of grasp and pinch; positive Tinel's and Phalen's signs; reduced range of motion for his low back; and negative straight leg raises. (*Id.*). Dr. Awerbuch continued to encourage use of wrist splints and gave plaintiff a prescription for Motrin. (*Id.*).

More than one year later, in August 2010, Dr. Awerbuch issued an opinion regarding Plaintiff's physical abilities. (Tr. 265). Dr. Awerbuch opined that, in an eight-hour workday, plaintiff could lift less than ten pounds, walk less than two hours, sit less than six hours, must alternate between sitting and standing, and had moderate limitations in his arms and legs. (*Id.*). Dr. Awerbuch also indicted that plaintiff could not perform forceful or repetitive work, could not climb, balance, or use power tools, and could perform only limited bending and stooping. (*Id.*).

The Commissioner contends that plaintiff's challenge to the ALJ's weighing of Dr. Awerbuch's opinion consists of a single conclusory sentence followed by a generic recitation of law regarding treating physician opinions. According to the Commissioner, plaintiff's "argument" fails to mention or discuss Dr. Awerbuch's opinion or explain why he believes the ALJ's analysis of that opinion was

improper, and that plaintiff's argument is thus insufficient to raise an argument for consideration on appeal. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted). The Commissioner goes on to argue that, in any event, the ALJ reasonably gave Dr. Awerbuch's opinion little weight, finding it inconsistent with the medical evidence. (Dkt. 5-2, Pg ID 45). According to the Commissioner, the ALJ reasonably found plaintiff's daily activities inconsistent with work-preclusive limitations, noting that plaintiff reported being able to mow the lawn, shop for groceries, do laundry, and perform other household chores. (*Id.*). The Commissioner further notes that plaintiff reported in an Adult Function Report that he exercised three days per week using a recumbent bike, went grocery shopping, attended sporting events, and could walk one mile before needing to stop to rest. (Tr. 159, 164). Plaintiff reported to consultative examiner, R. Scott Lazzara, M.D., that he was able to independently perform household chores and activities of daily living, including driving, shoveling, raking, and mowing, and that he was able to sit for an hour, stand for 45 minutes, and lift approximately 20 pounds. (Tr. 238). The Commissioner contends that the ALJ thus reasonably found such activities inconsistent with complaints of disabling

8

limitations and symptoms. (Dkt. 5-2, Pg ID 45).

The Commissioner further argues that the ALJ reasonably found plaintiff's medication and treatment history to be inconsistent with allegations of serious symptoms. (Dkt. 5-2, Pg ID 46). Although Dr. Awerbuch diagnosed plaintiff with bilateral carpal tunnel syndrome and low back pain, he prescribed no pain medication, and stated that plaintiff "does not need anything at the moment in regard to pain medication. He is able to manage quite well with occasional Motrin." (Tr. 184-85). Plaintiff was also encouraged to use wrist splints and take daily vitamin B complex. (Dkt. 5-2, Pg ID 44, citing Tr. 185, 187). In 2009, plaintiff reported his condition as "unchanged" from 2007 and that Motrin improved his symptoms. (Tr. 258). At that March 2009 visit, Dr. Awerbuch prescribed Motrin for plaintiff's pain and continued to encourage the use of wrist braces and daily vitamin B supplements. (*Id.*). Thus, the Commissioner concludes, the ALJ reasonably found that pain managed effectively with "occasional" Motrin was inconsistent with allegations of work-preclusive symptoms. (Dkt. 5-2, Pg ID 44-45). The Commissioner further argues that the ALJ commented on the infrequency of plaintiff's visits with Dr. Awerbuch–noting that plaintiff saw Dr. Awerbuch twice in the fall of 2007, but not again until 2009. (Dkt. 5-2, Pg ID 44).

The Commissioner also argues that the ALJ properly gave great weight to

the opinions of the two consultative examiners.  (Dkt. 5-2, Pg ID 46).  Plaintiff was examined by Dr. Elaine Kountanis, M.D., in November 2007.  (Tr. 229-31).  Dr. Kountanis found plaintiff capable of performing "all the orthopedic maneuvers on the disability form," including a full squat, picking up a ten pound suitcase and lifting it overhead ten times in succession, performing three push-ups on his knees, and performing both heel and toe walking.  (*Id.*).  Physical examination of plaintiff showed full range of motion for all areas, normal gait, normal fine and gross motor coordination, normal reflexes, normal motor function, normal sensation, and negative straight leg raise tests.  (*Id.*).

One year later, in October 2008, plaintiff presented for a consultative examination with Dr. Lazzara.  (Tr. 236-42).  Plaintiff reported that he was able to independently perform household chores and activities of daily living, including driving, shoveling, raking and mowing, and that he could sit for an hour, stand for 45 minutes, and lift approximately 20 pounds.  (*Id.*).  Dr. Lazzara found normal physical examination results, including capability to perform all abilities listed on the report, normal reflexes, ability to toe and heel walk, negative straight leg raises (within normal limits), normal grip strength and unimpaired dexterity, noting plaintiff could pick up a coin, button clothing, and open a door.  (*Id.*).  Dr. Lazzara found no evidence of carpal tunnel disease or degenerative arthritis in his back, but did note some laxity in plaintiff's right ankle, but no atrophy or fasciculation.

10

(*Id.*).  Dr. Lazzara concluded that plaintiff was able to perform orthopedic maneuvers and that any difficulty resulted from plaintiff's size, not any medical condition.  (*Id.*).

According to the Commissioner, the consultative examiners' physical examinations of plaintiff reasonably demonstrated that carpal tunnel syndrome did not manifest into work-related physical limitations, despite plaintiff's contention that Dr. Lazzara's findings are refuted by an EMG nerve study that found evidence of carpal tunnel syndrome and an MRI report that found disc degeneration and herniation at the L1-L2 level.  The Commissioner argued that the mere diagnosis of an impairment fails to indicate severity of an impairment or how that impairment may or may not manifest into work-related functional limitations.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990).

Finally, the Commissioner acknowledges that the ALJ incorrectly stated that plaintiff had undergone successful surgery for either his carpal tunnel syndrome or low back condition (Dkt. 5-2, Pg ID 45-46), but argues that any error committed by the ALJ was harmless because the ALJ relied on plaintiff's purported successful surgery as only one of many factors that weighed against allegations of disabling limitations.  According to the Commissioner, the remaining factors, including the findings of the consultative examiners, strongly suggest that plaintiff had no greater limitations than those identified by the ALJ, and thus any error committed

11

by the ALJ should be found harmless.  Thus, the Commissioner concludes, the ALJ's decision is supported by substantial evidence in the record as a whole, and the Court should affirm his decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

12

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

 If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

14

the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits

16

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

17

### C.    Analysis and Conclusions

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinion of his "long-time treating physician," Dr. Awerbuch, and improperly gave great weight to the opinion of Dr. Lazzara, a one-time consultative examiner.  As both parties acknowledge, and as the Sixth Circuit recently re-emphasized, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007).  The opinion of a treating physician is the subject of a special rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given controlling weight, it is subject to a rebuttable presumption of deference.  20 C.F.R. §§ 404.1527(c), 404.927(c).  "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."  *Rogers*, 486 F.3d at 406 (citing § 404 .1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies.  Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."  As a rule, the ALJ

18

must build an accurate and logical bridge between the evidence and his conclusion.
*See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding
the ALJ's failure to make sufficiently clear why he rejected the treating physician's
opinion was not harmless error, even if substantial evidence not mentioned by the
ALJ may have existed to support the ultimate decision to reject the treating
physician's opinion).  Thus, "an ALJ's decision must articulate with specificity
reasons for the findings and conclusions he makes."  *Bailey v. Comm'r of Soc.
Sec.*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

Dr. Awerbuch opined, in part, that plaintiff could lift and carry less than 10
pounds, stand or walk less than two hours in an eight-hour workday, sit less than
six hours, with a sit/stand option, and that plaintiff had moderate limitations in his
upper and lower extremities, that he should not perform forceful or repetitive
gripping, or use power tools, climb or balance, and that he would miss work more
than 40 hours per month because of his limitations, (Tr. 265), but the ALJ
apparently rejected these findings and did not incorporate any of these limitations
in plaintiff's RFC.[1]  The ALJ stated that he "gives little weight to Dr. Awerbuch['s]
opinion due to the fact it is inconsistent with the medical evidence."  (Dkt. 5-2, Pg
ID 45).  While the Commissioner points to a variety of evidence in the record to

---

[1] Dr. Awerbuch also opined, consistently with the RFC determined by the ALJ, that
plaintiff could perform limited bending, reaching, twisting and stooping.  (Tr. 265).

19

support the ALJ's position in this regard, the undersigned notes that the only

"medical evidence" the ALJ identified in support of his finding is: (1) a history of

Guillain-Barre syndrome, diabetes mellitus and carpal tunnel syndrome, but

"[a]ccording to medical records, and laboratory tests, [plaintiff] has not suffered

from [Guillain-Barre syndrome] in years;" (2) the dosage level of plaintiff's

medications is low, "suggest[ing] the symptoms are not particularly serious;" and

(3) the (wholly incorrect) statement that plaintiff underwent "generally successful"

surgery for "the alleged impairments." (Dkt. 5-2, Pg ID 45-46). The ALJ also

notes that plaintiff mows the yard, grocery shops, does the laundry and other

household chores." (*Id.*). However, the ALJ wholly failed to explain which of Dr.

Awerbuch's findings are undermined by what evidence. The ALJ did not make a

finding that Dr. Awerbuch's findings were unsupported by his treatment notes or

the EMG tests he conducted in 2007 and 2009. Dr. Awerbuch did not opine that

plaintiff suffered any limitations as a result of his history of Guillain-Barre

syndrome. And, as the Commissioner concedes, the statement by the ALJ that

plaintiff underwent generally successful surgery for either his carpal tunnel

syndrome or his back impairment is completely false, and thus provides no support

for the ALJ's opinion.[2] While plaintiff's use of mild medications may undercut

---

[2] Plaintiff argues that the ALJ erred in relying on this improper information, and the
Commissioner argues that this erroneous finding by the ALJ is harmless because it was "only
one of many factors that weighed against allegations of disabling symptoms." However, as
shown above, the ALJ failed to identify specific discrepancies between Dr. Awerbuch's opinion

plaintiff's credibility regarding his complaints of disabling pain, the undersigned finds that this "evidence," standing alone, is insufficient to comply with the explanatory requirement of the treating-source rule as the ALJ failed to identify what "symptoms are not particularly serious" and which of Dr. Awerbuch's findings are undermined. *See Lowery v. Comm'r of Soc. Sec.*, 55 Fed. Appx. 333, 339 (6th Cir. 2003) ("Moreover, an 'ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimal level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'") (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).  In addition, although the undersigned is aware that the ALJ is not required to discuss all the evidence submitted, and that his failure to cite specific evidence does not indicate that it was not considered, the undersigned notes that the ALJ did not address the March 2009 EMG test conducted by Dr. Awerbuch, after the latest consultative examination in 2008, that revealed bilateral carpal tunnel syndrome, left L1-L2 radiculopathy and peripheral polyneuropathy, but no evidence of myositis or cervical radiculopathy.  (Tr. 259).  Thus, the undersigned finds that the ALJ's perfunctory and conclusory statements do not comply with the explanatory requirement of the treating-source rule because the ALJ does not identify and

---

and the his treatment notes and tests and failed to otherwise identify which of Dr. Awerbuch's findings are undermined by what evidence, and thus the ALJ's reliance of this erroneous information is not harmless error.

explain which of Dr. Awerbuch's findings are undermined by what evidence. *See Wilson v. Comm'r of Soc. Sec.*, 2012 WL 6737766, at *8-9 (E.D. Mich. Nov. 19. 2012) (finding ALJ's statement that "[t]his opinion is given little weight as the totality of the records do not support such significant limitations" insufficient to comply with the requirements of the treating source rule), *adopted by* 2012 WL 6737764 (E.D. Mich. Dec. 28, 2012); *see also Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion gets the short end of the stick.").

In addition to failing to sufficiently explain why he gave Dr. Awerbuch's opinion less than controlling weight, the ALJ also failed to adequately demonstrate that he considered and balanced the factors set forth in 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that Dr. Awerbuch's opinion should not be given controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Awerbuch's opinion was not entitled to controlling weight, it was entitled to

22

deference. 20 C.F.R. § 404.1527(d)(2)(I).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Awerbuch's opinion should not be

given controlling weight or even deference, as required by the regulations. 20

C.F.R. § 404.1527(d)(2).

   The Commissioner argues that the ALJ properly cited evidence that was

inconsistent with Dr. Awerbuch's opinion thereby properly according Dr.

Awerbuch's opinion little weight.  The Commissioner refers to activities described

in an adult function report and in the consulting examiner's notes, as well as the

specific findings of the consulting examiners, arguing that the ALJ reasonably gave

great weight to the consulting examiners.  As to these remaining justifications

offered by the Commissioner, although the Commissioner makes a compelling

argument, the undersigned notes that "the courts may not accept appellate

counsel's *post hoc* rationalizations for agency action.  It is well-established that an

agency's action must be upheld, if at all, on the basis articulated by the agency

23

itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted)).  As to the consulting examiners, the ALJ here only found that "[a]fter careful consideration of the objective evidence of record, the testimony at the hearing and the claimant's daily activities of daily living, the [ALJ] gives great weight to the opinion of Dr. Kountanis and Dr. Lazzara, the consultative examiners."  (Dkt. 5-2, Pg ID 46).  The ALJ articulated no further basis for his finding assigning great weight to these consulting examiners' opinions.  "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"  *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).  Thus, the Commissioner's *post hoc* rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning his omissions in considering the opinion of plaintiff's treating physician.  This matter should be remanded for the ALJ to further explain the weight given plaintiff's treating physician opinions.[3]

---

[3] The undersigned also notes that another flaw in the ALJ's analysis is the improper consideration of the opinion of a non-physician single decision-maker on the equivalency issue at step three of the sequential analysis.  (Dkt. 5-3, Pg ID 77; Dkt 5-7, Pg ID 243-50, 265-72).  In this case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2), which provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The Programs Operations Manual System ("POMS"), however, requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED in part**, that defendant's

motion for summary judgment be **DENIED in part**, and that the findings of the

Commissioner be **REVERSED in part**, and that this matter be **REMANDED** for

further proceedings under sentence four of 42 U.S.C. § 405g.

The parties to this action may object to and seek review of this Report and

---

assessment form] was completed by an SDM *because SDM-completed forms are not opinion evidence at the appeal levels.*"  POMS DI § 24510.05 (emphasis added).  Rather, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."  *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b).

In this case, there is no Disability Determination and Transmittal form or PRFC assessment form signed by a medical advisor as to plaintiff's physical impairments in this record, and thus no medical expert's opinion on the issue of equivalency.  (Dkt. 5-3, Pg ID 77; Dkt 5-7, Pg ID 243-50, 265-72).  The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton v. Astrue*, 2012 WL 1852084, at *13 (D.N.H. May 11, 2012) (collecting cases); *see also Byberg v. Comm'r of Soc. Sec.*, 2013 WL 1278500, at *2 (E.D. Mich. Mar. 27, 2013) ("Defendant's attempt to expand the purposes of the SDM model beyond the initial determination of disability and into the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich. Feb. 4, 2013) (remanding because no expert opinion on equivalence in the record), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").  While the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalency requirements, the undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p. For these additional reasons, the undersigned recommends that, on remand, the ALJ should obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

26

Date: August 8, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 8, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Vanessa Miree Mays, AUSA, and Meghan O'Callaghan, Social Security Administration.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov

27